# IN UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kalvin D. Williams, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>Woodland Park Chicago LLC, Jonathan D. )<br>Mickelson a/k/a Julian Mickelson and )<br>Lukasz Kristen a/k/a Lucas Kristen, )<br>)<br>Defendants. ) | Case No. 1:21-cv-01964<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT OF EMPLOYMENT DISCRIMINATION

Plaintiff, Kalvin D. Williams ("Williams"), by and through his attorneys, Pietrucha Law Firm, LLC, alleges and states as follows:

### INTRODUCTION

1. The Plaintiff, Williams, brings this action against the Defendants, Woodland Park Chicago LLC ("Woodland Park"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq. ("Title VII") and against Woodland Park, Jonathan Mickelson a/k/a Julian Mickelson ("Mickelson") and Lukasz Kristen a/k/a Lucas Kristen ("Kristen") (collectively the "Defendants") for violations of 42 U.S.C § 1981 ("Section 1981").

### PARTIES AND JURISDICTION

2. Williams is a brown-skinned, African-American/Black male/man and a resident of Cook County, Illinois. At all relevant times to the Complaint, Williams was an employee of Woodland Park as defined by Title VII and Section 1981.

3. Upon information and belief, Woodland Park is an Illinois limited liability company formed under the laws of the State of Illinois and does business in Cook County, Illinois, providing residential property and property management. At all relevant times, Woodland Park was Williams' employer as defined by Title VII and Section 1981.

4. Upon information and belief, Mickelson is an individual who serves as Woodland Park's Chief Executive Officer. Mickelson is a resident of the state of Illinois and is a light-skinned Caucasian/white male/man.

5. Upon information and belief, Kristen is an individual who serves as Woodland Park's managing member. Kristen is a resident of the state of Illinois and is light-skinned Caucasian/white male/man.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under Title VII, and pursuant to §1343(a)(l), and 42 U.S.C. § 1981, in that this is also a civil action arising under Section 1981.

**VENUE**

7. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practice was committed in Cook County, Illinois, and there is no other district that has substantial connection to the claim.

## CONDITIONS PRECEDENT

8.  On January 4, 2021, Williams timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") as follows (*See Exhibit A*):

> **DISCRIMINATION BASED ON** *(Check appropriate box(es).)*
> [X] RACE  [X] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
> [ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
> [ ] OTHER *(Specify)*
>
> **DATE(S) DISCRIMINATION TOOK PLACE**
> Earliest: 07-23-2020   Latest: 08-18-2020
> [ ] CONTINUING ACTION
>
> **THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s)):*
>
> I began my employment with Respondent on or about July 29, 2020. My most recent position was Community Manager. During my job interview, I was asked about my marital and familial statuses. After asking if I was married and how many children I had, Respondent informed me they would reimburse me up to $350 a month for health benefits after their advertisement stated otherwise. I was also subjected to different terms and conditions of employment, including, but not limited to, not having my taxes deducted correctly and not having my checks direct deposited. On or about August 18, 2020, I was discharged.
>
> I believe I have been discriminated against because of my race, Black, my color, brown skinned, and my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

9.  On or about January 14, 2021, the EEOC issued Williams a Notice of Right to Sue (*See Exhibit B*). This Complaint has been filed within 90 days of receipt of that notice.

## FACTS

10. Williams began working for Defendants on or about July 29, 2020 as Community Manager.

11. Williams was qualified for the job, as the job required 3 years of property management experience, and Williams' experience met this requirement.

12. During Williams' job interview with Defendants, on several occasions Defendants made inappropriate comments about a Black caregiver hired by Mickelson's family, assumed Williams had children, asked how many children he fathered, asked whether he was married and inquired about Williams' ability to secure childcare while employed, while Defendants, upon

information and belief, did not ask these questions of non-black, light-skinned employees or female/women employees.

13. After Williams informed Defendants that he was an unmarried father, Williams requested to be paid by direct deposit of his paycheck to his bank account, but Defendants did not proceed in setting up Williams' direct deposit for payroll, even though, upon information and belief, Defendants provided direct deposit payroll for other employees not in Williams' protected classes.

14. Instead, Defendants marginalized Williams by failing to provide him with the same benefits given to similarly situated employees who did not share the same race, color or gender.

15. For example, as it related to health insurance, even though Defendants advertised that Williams' job would come with "health insurance" as a benefit, Defendants did not provide Williams with health insurance. Instead, Defendants promised to reimburse Williams up to $350.00 per month for health benefits, treating other employees not of the same classes more favorably by offering them bona fide health insurance.

16. Defendants also failed to properly deduct employment taxes from Williams' pay.

17. As a result of the disparate treatment, Williams complained to Defendants, asking about his health insurance, direct deposit status and taxes.

18. After employing Williams for only a few weeks, on August 18, 2020, Mickelson suddenly claimed Williams was not a good fit for the job and fired him.

## COUNT ONE
### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e et al.)
### (Against Woodland Park)

19. Williams repeats and realleges paragraphs 1 through 18 hereof, as if fully set forth herein.

20. Williams is African-American/Black and was qualified for his position when Defendants fired him.

21. Defendants made discriminatory decisions that marginalized Williams regarding his race. Specifically, Defendants assumed that because Williams is African-American/Black he would be unmarried, have kids out of wedlock and be unable to secure childcare, as Mickelson recounted that an African-American/Black woman was employed by his family as his childhood nanny.

22. Williams suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

23. Defendants intentionally violated Williams' rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT TWO
### Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e et al.)
### (Against Woodland Park)

24. Williams repeats and realleges paragraphs 1 through 23 hereof, as if fully set forth herein.

25. Williams is brown-skinned and was qualified for his position when Defendants fired him.

26. Defendants made discriminatory decisions that marginalized Williams regarding his color. Specifically, Defendants assumed that because Williams is brown-skinned he would be unmarried, have kids out of wedlock and be unable to secure childcare, as Mickelson recounted that a brown-skinned woman was employed by his family as his childhood nanny.

27. Williams suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

28. Defendants intentionally violated Williams' rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

**COUNT THREE**
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e et al.)**
**(Against Woodland Park)**

29. Williams repeats and realleges paragraphs 1 through 28 hereof, as if fully set forth herein.

30. Williams is male/man and was qualified for his position when Defendants fired him.

31. Defendants made discriminatory decisions that marginalized Williams regarding his sex. Specifically, Defendants assumed that because Williams is an unmarried man, he would have kids out of wedlock and be unable to secure childcare, as Mickelson recounted that a female/woman was employed by his family as his childhood nanny.

32. Williams suffered damages as a result of Defendants unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

33. Defendants intentionally violated Williams' rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT FOUR
### Race Discrimination in Violation of Section 1981
### (42 U.S.C. § 1981)
### (Against All Defendants)

34. Williams repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

35. Williams is African-American/Black and was qualified for his position when Defendants fired him.

36. Defendants made discriminatory decisions that marginalized Williams regarding his race. Specifically, Defendants assumed that because Williams is African-American/Black he would be unmarried, have kids out of wedlock and be unable to secure childcare, as Mickelson recounted that an African-American/Black woman was employed by his family as his childhood nanny.

37. Williams suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

38. Defendants intentionally violated Williams' rights under Section 1981, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

C. Order Defendants to reinstate Plaintiff to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

D. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

F. Award to Plaintiff compensatory damages;

G. Award to Plaintiff punitive damages; and

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: June 23, 2021  Respectfully submitted:

Plaintiff Kalvin D. Williams

*/s/ Cynthia N. Pietrucha*
Cynthia N. Pietrucha
One of His Attorneys

Cynthia N. Pietrucha
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
cpietrucha@sulaimanlaw.com